**NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE et al., Plaintiffs,**

v.

**ITT COMMUNITY DEVELOPMENT CORPORATION, Defendant.**

Civ. A. No. 74–1379.

United States District Court, District of Columbia.

May 6, 1975.

---

CONSENT ORDER

CHARLES R. RICHEY, District Judge.

This is a class action brought by plaintiffs pursuant to the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et seq.*

In their Complaint, plaintiffs allege that defendant has engaged in racially discriminatory advertising and marketing practices. Plaintiffs allege that these practices indicate a "preference, limitation, or discrimination based on race" in violation of 42 U.S.C. § 3604(c) and that they have the effect of making housing unavailable on account of race.

Defendant denies the material allegations set forth in the Complaint.

Although maintaining that its denials are correct as a matter of fact and law, defendant states that it subscribes to and supports the spirit and intent of legislation designed to provide equal housing opportunities and that it desires to cooperate with plaintiffs in order to support further the objective of equal housing opportunities for all persons without regard to race, color, religion, sex, or national origin. To that end, defendant desires to undertake the affirmative program set forth below. In view of defendant's willingness to undertake the measures set forth below, plaintiffs have agreed not to seek a litigated determination as to whether defendant violated the Fair Housing Act of 1968.

Therefore, plaintiffs and defendant consent to entry of this Order.

## I.

It is hereby ordered, adjudged, and decreed, that the defendant, ITT Community Development Corporation, its agents, employees and successors, will not discriminate in any manner whatsoever against any person because of race, color, religion, sex, or national origin in the sale or rental of dwellings, in the provision of services in connection therewith, or in the marketing, promotion, advertising, or display of such dwellings and will continue to assure that no notice, statement, or advertisement with respect to the sale or rental of a dwelling that is made, printed, or published, or caused to be made, printed, or published by it, will directly or indirectly indicate a preference, limitation, or discrimination on account of race, color, religion, sex, or national origin.

## II.

### NONDISCRIMINATORY ADVERTISING AND SOLICITATION

It is further ordered that within the time periods specified below the defendant shall implement the following affirmative steps with regard to the sale or rental of any and all residential dwellings which it owns, operates, or manages:

A. Within 30 days after the entry of this Order, continue to display in a prominent place and clearly visible to applicants a fair housing poster in all offices in which sales activity takes place. This poster shall be in a form approved by the Secretary of HUD, 24 C.F.R. Part 110, published in 37 Fed. Reg. 3429;

B. Include in all advertising of any dwellings offered for sale or rent published 30 days after the entry of this Order a statement prominently placed and easily legible (or in the case of radio advertising, prominently inserted and clearly audible) indicating that dwellings are made available without regard to race, color, religion, sex, or national origin, provided, that defendant shall be permitted to utilize and distribute its present inventory stock of printed advertising materials (e. g., brochures, handouts, mailing packets, inserts) without such a statement, provided further that all advertising materials printed after the entry of this Order, including those to replace present inventories, and all advertising materials distributed or otherwise utilized after January 1, 1976 shall contain such a statement. With respect to newspaper and other printed advertisements, this requirement shall be satisfied by the use of the "Equal Housing Opportunity" logotype contained in the Advertising Guidelines for Fair Housing promulgated by the United States Department of Housing and Urban Development, 37 Fed.Reg. 6700. However, with respect to the utilization of the "Equal Housing Opportunity" logotype in such advertisements, the defendant agrees to include the logotype in accordance with the following standards: in advertisements larger than ½ page, an "Equal Housing Opportunity" logotype no smaller than 1 inch by 1 inch shall be used; in advertisements of ½ page, an "Equal Housing Opportunity" logotype no smaller

than ¾ inch by ¾ inch shall be used; in advertisements of less than ½ page, an "Equal Housing Opportunity" logotype no smaller than ½ inch by ½ inch shall be used; provided, however, that no logotype is required to be used in advertisements smaller than four column inches;

C. Advertising printed after the 90th day following entry of this Order respecting the sale or rental of any property at Palm Coast, which depicts human models, shall depict blacks and other minorities [1] as well as white persons in accordance with the Advertising Guidelines for Fair Housing, 37 Fed. Reg. 6700. In addition, all inventory items (described below) that are distributed or otherwise utilized after January 1, 1976 and which depict human models shall do so in accordance with the Advertising Guidelines for Fair Housing, 37 Fed.Reg. 6700, without regard to when such items were printed. In all such advertising minority human models shall appear in a peer relationship with white human models.

1. With respect to advertisements printed in newspapers and periodicals, defendant shall continue to use human models in a substantial proportion of its display advertising for one year from the 90th day following entry of this Order and shall not discontinue the use of human models prior to January 1, 1978.

2. With respect to inventory items (e. g., brochures, handouts, direct mail packets, inserts, etc.), defendant shall continue to use human models in a substantial proportion of such materials for 12 months following the date it next publishes inventory items and shall not discontinue the use of human models in inventory materials prior to January 1, 1978.

With respect to both inventory items and advertisements printed in newspapers and periodicals, as well as all other forms of advertising, defendant shall retain discretion, based on budgetary constraints and profitable lead generation, to determine the total amount of advertising;

D. Continue to solicit purchasers likely to have an interest in defendant's Palm Coast development in various geographic areas and communities inhabited predominantly by blacks and other minorities. This paragraph shall be implemented by utilizing such marketing devices and techniques, e. g., marketing lists, as are reasonably calculated to attract such minority group members.

### III.

### AFFIRMATIVE ACTION

In addition to effecting the changes set forth in section II. above, defendant shall also, by way of affirmative action, take the following steps for a period of 18 months following entry of this Order with respect to the property it owns at Palm Coast, Florida:

A. Between the date of entry of this Order and the end of calendar year 1976 defendant shall allocate not less than a total of $55,000 of its media advertising budget (newspapers, magazines, radio, and TV) to advertising in national or local media which serve primarily black and other minority populations of geographic areas in which the defendant is now or in the future attempts to solicit purchasers. These efforts may include the use of available minority-oriented media in those geographic areas for the purpose of featuring the Palm Coast development. Minority-oriented media in the Washington, D. C. area are, for example, radio stations such as WHUR–FM, WOOK–AM and WOL–AM and the Washington Afro-American. Examples of national minority-oriented news media are Ebony, Black Enterprise,

---

1. The term "minority" as used throughout this Order includes blacks, Spanish surnamed Americans, Asian Americans, and Native Americans.

Jet, Crisis, Encore magazines and minority professional journals.

B. Designate an Administrator of Sales for Minority Affairs, who shall develop and administer a program to enhance sales efforts and sales results in minority markets. This position shall have its subordinate counterpart in each of defendant's sales offices. The functions of this person shall include, but shall not be limited to, the development, within a period of six months from the effective date of this Order, of a program of direct mail within uniform demographic criteria to minority persons and to organizations which specifically address themselves to minority membership. In addition, it shall be the responsibility of this person to make estimates and to keep records of such estimates, based upon periodic surveys of defendant's sales employees, of the number of minority households attending marketing dinners (gatherings regarding the sale of property at Palm Coast) and the number of minority households who personally, or through their agents, made on-site inspections of defendant's Palm Coast development, such records to be kept from the date of entry of this Order;

C. Attempt, by other promotional means, such as dinner parties, telephone solicitations and booths at conventions of civil rights organizations, to solicit potential minority purchasers, based upon the uniform application of economic criteria;

D. Ten months after the entry of this Order, counsel for the parties shall confer to determine the effectiveness of actions taken pursuant to paragraphs A, B, and C of this section III. in supporting defendant's affirmative action program and whether this program should be continued, modified, discontinued or replaced.

E. Defendant shall continue to make a good-faith affirmative effort within the next 18-month period, beginning 30 days following the entry of this Order, to recruit additional minority employees to its sales force, subject to reasonable budgetary constraints applicable to defendant's levels of employment generally. Pursuant to this program, defendant and its solicitation and sales agents shall forthwith contact logical sources of minority employees (e. g., predominantly black educational institutions, Urban League, NAACP, National Association of Real Estate Brokers, prominent ministers or professional persons in the black community; federal, state, or private employment services serving black or other minority communities, etc.) within a reasonable distance of Palm Coast, Florida, or its affected sales and solicitation agents, and inform them of the defendant's affirmative program to recruit minority employees and purchasers. The communications to such minority sources shall include a brief description of the jobs performed by employees of defendant and its solicitation and sales agents, and the qualifications required for each job. In recruiting and hiring minority employees, the defendant shall not require that they possess qualifications for any job or position more exacting than those which were in effect with respect to white employees prior to the institution of this action. Sales force employees shall be assigned, promoted and transferred without regard to race.

IV.

NOTIFICATION

It is further ordered that within 45 days from the entry of this Order, the defendant shall provide sales and marketing employees and agents with a typewritten or printed synopsis of the provisions of this decree. Such notification shall include:

1. Informing each employee or agent of the provisions of this Order, includ-

ing any record keeping and reporting provisions hereinafter described, and of the duties of the company and all of its sales and marketing personnel under the Fair Housing Act. Such employees or agents shall be advised that failure to comply with the provisions of this Order or of the Fair Housing Act may subject them to dismissal, or other disciplinary action;

2. Making a copy of this Order available for inspection by employees and agents at each office maintained by the defendant and notifying each employee or agent that the Order is available for their inspection;

3. Within ten days after the employment or engagement of any new employee or agent defendant shall provide such employee or agent with the information and instructions described herein.

It is further ordered that within 45 days from the entry of this Order defendant shall provide all companies, agents or persons with whom it enters into agreements to be its sales and solicitation representatives and agents with a typewritten or printed synopsis of this Order as it affects such companies, agents or persons. Defendant shall not enter into agreements on terms inconsistent with this Order and shall make a good faith effort to achieve compliance with the terms of such agreements by such parties.

## V.

### REPORTING REQUIREMENTS

It is further ordered that within 10 days of December 31, 1975 and within 10 days of December 31, 1976 defendant shall serve upon counsel for the plaintiffs the following information and materials:

A. Two specimen copies of all new brochures, handouts, mailing, or other printed promotional material distributed or prepared for distribution after the 90th day following entry of this Order;

B. Two specimen copies of each advertisement [2] published in any newspaper, periodical or guide subsequent to the entry of this Order, together with a list of each newspaper, periodical, or guide in which such advertisement appeared and the date on which each such advertisement appeared;

C. Two copies of the script of each advertisement used as a radio or television advertisement [2] subsequent to the entry of this order, together with a list of all radio and television stations on which such advertisements have appeared and the date and time of day each such advertisement appeared;

D. A list, broken down by race, of the number of minority persons who, subsequent to the 30th day following the entry of this Order, purchased homesites at defendant's Palm Coast development.

E. A narrative statement of the steps taken to implement paragraphs II.-D., III.B., III.C., and III.E.

\* \* \*

Within 10 days of December 31, 1976 defendant shall provide a map of Palm Coast indicating the location of all lots that have been purchased by minority purchasers subsequent to the 30th day following the entry of this Order.

Within 10 days of December 31, 1977 defendant shall provide a statement indicating the percentage of defendant's advertising in each of the following media utilizing human models during the period January 1, 1977 to December 31, 1977: mailings; brochures, flyers, handouts, and leaflets; billboards; signs; television; newspapers; magazines;

2. Where identical advertisements appear in various publications or appear more than once in any single publication, a total of 2 copies is sufficient so long as each publication is listed as herein required.

videotapes; movies; and information booths. In addition, defendant shall state the number of minority persons who purchased homesites at defendant's Palm Coast development from January 1, 1977 through December 31, 1977.

Preparation of the lists required under the reporting requirements of this section shall be solely for the purpose of compliance with this decree and shall not be considered discriminatory.

## VI.

### COSTS

It is further ordered that defendant, without any admission of unlawful conduct or discrimination on its part vis-a-vis any person, but solely for the purpose of resolving the disputed issues between them, shall pay to plaintiff Housing Opportunities Council of Metropolitan Washington, Inc. (HOC) the sum of $2,750.00 for all costs incurred in connection with its participation in conciliation negotiations arising out of HOC's complaint against defendant filed with the Secretary of the United States Department of Housing and Urban Development. Defendant shall also pay plaintiffs' counsel fees in the amount of $13,700.00. These fees have been computed at hourly rates of $45 and $60, in accordance with the relative levels of experience of the two attorneys involved. Payment of the foregoing shall constitute full release by all plaintiffs for costs, expenses, and fees incurred in all negotiations and other activities arising out of the complaints of HOC and the other plaintiffs.

The undersigned consent to the entry of this Order.

For the plaintiffs:

/s/ Martin E. Sloane
MARTIN E. SLOANE
JAY MULKEEN
MICHAEL B. BARTON
National Committee Against
   Discrimination in
   Housing, Inc.
1425 H Street, N.W.
Suite 410
Washington, D. C.  20005
(202)  783-8150

/s/ James I. Meyerson
NATHANIEL R. JONES
JAMES I. MEYERSON
National Association for the
   Advancement of Colored People
1790 Broadway
New York, New York  10019
(212)  245-2100

For the defendant:

/s/ Walter Strang
WALTER STRANG
Vice President of Marketing
ITT Community Development Corp.
430 Park Avenue
New York, New York  10022
(212)  751-7800